UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

D.B. ZWIRN SPECIAL OPPORTUNITIES    :
FUND, L.P.                                                  08 Civ. 5438 (RMA)

                        Plaintiff,              :      NOTICE OF REMOVAL

                                                :
            v.                                          ECF CASE

                                                :
SCC ACQUISITIONS, INC., and JOHN DOE
I through JOHN DOE 100,                  :

                        Defendants.        :
-------------------------------------------------------x

        Pursuant to 28 U.S.C. §§ 1332(a)(1), 1441(a) and 1446, defendant SCC

Acquisitions, Inc. ("SCC"), by their attorneys, Diamond McCarthy LLP, hereby file

this Notice of Removal of the above-captioned action to the United States District

Court for the Southern District of New York from the Supreme Court of the State of

New York, County of New York, where the action is now pending.  In support of this

Notice of Removal, defendant states as follows:

        1.      The above-captioned action was commenced in the Supreme Court of the

State of New York, County of New York (Index No. 601591/08) ("Summons and

Verified Complaint"), on or about May 23, 2008.  A copy of the Summons and

Complaint are attached as Exhibit A.

        2.      The Summons and Complaint were served on SCC on or about May 27,

2008.

        3.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(a)(1).

4.    Plaintiff D.B. Zwirn Special Opportunities Fund, L.P. ("D.B. Zwirn) is a Delaware limited partnership with its principal place of business at 745 Fifth Avenue, New York, New York. Ex. A at ¶ 3.

5.    Defendant SCC is a California corporation with its principal place of business at 2392 Morse Avenue, Irvine, California.

6.    The first cause of action in plaintiff's complaint seeks judgment against SCC for alleged breach of a guarantee executed in connection with a $75,000,000.00 loan that plaintiff allegedly made to SunCal-Southwind JV, LLC (the "Southwind guarantee"). Id. at ¶¶ 36 through 41.

7.    Plaintiff alleges that, as of March 6, 2008, the outstanding balance of indebtedness due and owing under the loan was approximately $8,834,370.00 with interest accruing to date. Id. at ¶ 21.

8.    Plaintiff asserts that, pursuant to the Southwind guarantee, plaintiff is entitled to judgment against SCC for the amounts due and owing under the loan, plus interest. Id. at ¶ 41.

9.    The second cause of action in plaintiff's complaint seeks judgment against SCC for alleged breach of the Southwind guarantee on the ground that SCC is allegedly obligated under the guarantee to pay attorneys' fees and expenses in connection with costs plaintiff allegedly incurred in foreclosing liens of property and enforcing its rights under the Southwind guarantee. Id. at ¶¶ 52 through 55.

10.    The third cause of action in plaintiff's complaint seeks judgment against SCC for alleged breach of a guarantee executed in connection with a $35,000,000.00

loan that plaintiff allegedly made to SunCal Copper Canyon, LLC (the "Copper Canyon guarantee"). Id. at ¶¶ 46 through 51.

11.   Plaintiff alleges that, as of February 28, 2008, the outstanding balance of indebtedness due and owing plaintiff under the loan was approximately $2,871,341.28 with interest accruing to date. Id. at ¶ 26.

12.   Plaintiff asserts that, pursuant to the Copper Canyon guarantee, plaintiff is entitled to judgment against SCC for the amounts due and owing under the loan plus interest. Id. at ¶ 51.

13.   The fourth cause of action in plaintiff's complaint seeks judgment against SCC for alleged breach of the Copper Canyon guarantee on the ground that SCC is obligated under the guarantee to pay attorneys' fees and expenses in connection with costs plaintiff allegedly incurred in foreclosing liens of property and enforcing its rights under the Copper Canyon guarantee. Id. at ¶¶ 52 through 55.

15.   In the complaint, plaintiff also names as defendants "John Does 1 through 100." Plaintiff alleges that it "is unaware of the true names or capacities, whether individual, corporate, associate, or otherwise, of [the John Doe defendants]." Id. at ¶ 5.

15.   Accordingly, this action may be removed to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1445(a) because: (i) D.B. Zwirn and SSC are citizens of different states; (ii) D.B. Zwirn does not sufficiently identify defendants "John Does 1 through 100" such that diversity jurisdiction could be defeated; (iii) as pleaded by the complaint, the amount in controversy exceeds $75,000.00, exclusive of interest and costs; and (iv) this notice of removal is timely filed, pursuant to 28 §1446(b) because

fewer than thirty (30) days have elapsed since the service of the summons and complaint on SSC.

15.     The submission of this Notice of Removal is solely for the special purpose of removing this action to federal court and is not a general appearance by defendant SSC.

16.     By filing this Notice of Removal, SCC does not waive any defenses or counterclaims that may be available to it.

WHEREFORE, defendant SCC respectfully requests that this action be removed from the Supreme Court of the State of New York, County of New York to the United States District Court for the Southern District of New York.

Dated: New York, NY
June 16, 2008

DIAMOND McCARTHY LLP
*Attorneys for SCC Acquisition, Inc.*


By: _Sheila M. Gowan_
Sheila M. Gowan, Esq.
William T. Reid, IV., Esq.
620 8th Avenue, 39th Floor
New York, NY 10018
(Tel.): 212.430.5404
(Fax): 212.430.5409
sgowan@diamondmccarthy.com
breid@diamondmccarthy.com

THOMAS WHITELAW & TYLER LLP
Joseph E. Thomas, Esq.
18101 Von Karman Avenue, Suite 230
Irvine, CA 92612
(Tel.): 949.679.6400
(Fax): 949.679.6405
jthomas@twtlaw.com

4

To:

By Hand Delivery
Clerk of Court
Supreme Court of the State of New York
County of New York
60 Centre Street, Room 161
New York, NY 10007

By Hand Delivery
Steven Sinatra, Esq.
Daniel R. Milstein, Esq.
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
*Attorneys for plaintiff D.B. Zwirn Special Opportunities Fund, L.P.*

**EXHIBIT A**

*Front Desk US/27/08*

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

----------------------------------------------------------------X

D.B. ZWIRN SPECIAL OPPORTUNITIES FUND, L.P.,

                          Plaintiff,

          - against -

SCC ACQUISITIONS, INC. and JOHN DOE 1 through
JOHN DOE 100,

                        Defendants.

----------------------------------------------------------------X

Index No. 601591/08

Date Purchased: May 23, 2008

**SUMMONS**

The bases of venue are CPLR
501 (agreement of the parties)
and CPLR 503(a) (plaintiff's
residence)

TO THE ABOVE-NAMED DEFENDANTS:

       YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons, to serve a

notice of appearance, on the plaintiffs' attorneys within twenty (20) days after the service of

this supplemental summons, exclusive of the day of service (or within thirty (30) days after

the service is complete if this summons is not personally delivered to you within the State of

New York). In case of your failure to appear or answer, judgment will be taken against you

by default for the relief demanded in the complaint.

Dated:  New York, New York
       May 23, 2008

                        GREENBERG TRAURIG, LLP
                        Counsel for Plaintiff D.B. Zwirn Special
                        Opportunities Fund, L.P.

                   By:    /s/ Daniel R. Milstein
                        Steven Sinatra, Esq.
                        Daniel R. Milstein, Esq.

MetLife Building
200 Park Avenue
New York, New York 10166
(212) 801-9200

TO:     SCC Acquisitions, Inc.
        2392 Morse Avenue
        Irvine, California 92614
        Tel: (949) 777-4000

COPY TO:

        Voss, Cook & Thel LLP
        895 Dove Street
        Newport Beach, California 92660
        Attn: David Lurker, Esq.
        Tel: (949) 534-0225

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

------------------------------------------------------------------x

D.B. ZWIRN SPECIAL OPPORTUNITIES FUND, L.P.   :   Index No. 601591/2008

                          Plaintiff,   :

                  - against -   :   **COMPLAINT**

SCC ACQUISITIONS, INC. and JOHN DOE 1 through   :
JOHN DOE 100,

                          Defendants.   :

------------------------------------------------------------------x

Plaintiff D.B. Zwirn Special Opportunities Fund, L.P. (hereafter referred to as the "Plaintiff" or "Lender"), by its attorneys Greenberg Traurig, LLP, as and for its Complaint, respectfully alleges as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this action to recover on two guaranties of payment executed by defendant SCC Acquisitions, Inc. (the "Defendant") in connection with two significant loans to affiliates of Defendant secured by mortgages on which Lender recently foreclosed owing to the borrowers' monetary defaults. The first loan was a revolving loan of up to $75,000,000.00 made by Plaintiff to Suncal-Southwind JV, LLC. The second was a loan of up to $35,000,000.00 made by Plaintiff to Suncal Copper Canyon LLC. Lender and Defendant both agreed that Lender would not have made such loans without the guaranties at issue in place, but Defendant has not made good on its promises to Lender under them. By this action, Lender seeks to hold Defendant to those critical and clear promises.

## VENUE

2.      Venue is proper in New York County pursuant to CPLR 503(a) because Lender is resident in New York County and pursuant to CPLR 501 because the parties' have entered into a written contract consenting to New York County as the place of trial in any action or proceeding arising out of or relating to the guarantees at issue herein.

## THE PARTIES

3.      Plaintiff D.B. Zwirn Special Opportunities Fund, L.P. ("D.B. Zwirn") is a Delaware limited partnership with its principal place of business at 745 Fifth Avenue, New York, New York.

4.      Defendant SCC Acquisitions, Inc. ("SCC Acquisitions") is a California corporation with its principal place of business at 2392 Morse Avenue, Irvine, California.

5.      Plaintiff is unaware of the true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as John Does 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this pleading to set forth the true names and capacities of said Doe Defendants when the same are ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged or were acting in concert with, and with the permission, approval, and authorization of, the specifically named Defendants.

6.      Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants was the agent, or employee of each of the remaining Defendants, and in doing the things alleged herein, was acting within the scope of such agency, and that, in taking the actions

2

described herein, Defendants were acting by and through duly authorized and empowered agents and representatives, who were acting within the course and scope of their authority at the time of their action, or whose actions were ratified and approved.

## FACTS

### The Southwind Loan Documents

7.    On or about May 1, 2006, for value received, Plaintiff, as Lender, entered into a certain loan agreement (the "Southwind Loan Agreement") with SunCal-Southwind IV, LLC ("SunCal Southwind"), a Delaware limited liability company, as borrower. Pursuant to the Initial Loan Agreement, Lender make a revolving loan to SunCal Southwind in the amount of up to $75,000,000.00 to, among other things, redevelop existing residential apartments located in California and convert them into condominiums.

8.    In connection with the Southwind Loan Agreement, on or about May 1, 2006, for value received, SunCal Southwind executed and delivered to Lender a revolving promissory note dated as of May 6, 2006 in the original principal amount of up to $75,000,000.00 (the "Southwind Note").

9.    As part of the security for SunCal Southwind's payment obligations under the Southwind Note, SunCal-Heritage Village, LLC ("Heritage Village"), a California limited liability company, Suncal-Red Hill, LLC ("Red Hill"), a Delaware limited liability company and SunCal-Browning, LLC ("Browning" and together with Red Hill and Heritage the "Trustors"), a Delaware limited liability company, each executed and delivered to Plaintiff a deed of trust (collectively the "Southwind Deeds of Trust") pursuant to which Lender was given, inter alia, a first priority lien on the Trustors' respective fee simple interests in five (5) parcels of real

property and the improvements thereon located in Tustin and Santa Ana, California, which properties are more particularly describe therein.

10.    In order to induce Lender to enter into the Loan, and for other good and valuable consideration, on or about May 1, 2006 Defendant executed and delivered to Lender a guaranty pursuant to which, as more fully set forth below, Defendant unconditionally, absolutely, and irrevocably guaranteed to Lender "the due payment, fulfillment and performance of the 'Guaranteed Obligations'" (the "Southwind Guaranty"). A true and correct copy of the Southwind Guaranty is attached hereto as **Exhibit A**.

11.    The Southwind Loan Agreement, Southwind Note, Southwind Deeds of Trust and Southwind Guaranty, and all other documents executed by Borrower or Defendant, as Guarantor, in connection with the Southwind Loan, as amended, are referred to collectively herein as the "Southwind Loan Documents."

**Copper Canyon Loan Agreements**

12.    On or about July 25, 2005, Plaintiff, as Lender, loaned $35,000,000.00 to SunCal Copper Canyon, LLC ("SunCal Copper Canyon"), a Delaware limited liability company, as borrower, for the acquisition of and pre-development financing for 1,324 acres of real property located in Sparks, Nevada (the "Copper Canyon Loan").

13.    In connection with the Copper Canyon Loan, on or about July 25, 2005, for value received, SunCal Copper Canyon executed and delivered to Lender a promissory note dated July 25, 2005 in the principal amount of $35,000,000.00 (the "Copper Canyon Note").

4

14.    As part of the security for its payment obligations under the Copper Canyon Note, SunCal Copper Canyon executed and delivered to Plaintiff a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of July 25, 2005, pursuant to which Lender was given, inter alia, a first priority lien on SunCal Copper Canyon's fee simple interest in the property and the improvements thereon.

15.    On or about July 25, 2006, at the request of the Borrower, Lender and Borrower entered into a First Amendment To Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (as amended thereby, the "Copper Canyon Deed of Trust").

16.    In order to induce Lender to enter into the Copper Canyon Loan, and for other good and valuable consideration, on or about July 25, 2005, Defendant executed and delivered to Lender a guaranty pursuant to which, as more fully described below, Defendant unconditionally, absolutely, and irrevocably guaranteed to Lender "the due payment, fulfillment and performance of the 'Guaranteed Obligations'" (the "Copper Canyon Guaranty" and, together with the Southwind Guaranty, the "Guarantees"). A true and correct copy of the Copper Canyon Guaranty is attached hereto as **Exhibit B**.

17.    The Copper Canyon Note, Copper Canyon Deed of Trust, and the Copper Canyon Guaranty, and all other documents executed by SunCal Copper Canyon or Defendant, as Guarantor, in connection with the Copper Canyon Loan, are referred to collectively herein as the "Copper Canyon Loan Documents."

**The Southwind Default and Non-Judicial Foreclosure**

18.    Plaintiff sent SunCal Southwind a Notice of Event of Default on August 28, 2007, regarding SunCal Southwind's failure to make payment of $446,216.01 to Lender as required by

5

the terms of the Southwind Note on August 10, 2007. Plaintiff informed SunCal Southwind that, as a consequence of its default, all outstanding obligations due to Lender under the Southwind Loan Documents were immediately owing to Lender, including interest at the Default Rate and all other charges, fees, attorneys' fees and disbursements in connection therewith ("Southwind Notice of Default").

19.     SunCal Southwind failed to cure the default.

20.     A non-judicial foreclosure sale occurred on March 6, 2008 in Orange County, California, whereby the Red Hill, Heritage, and Browning properties were sold. Plaintiff bid on and obtained title to the three properties. Plaintiff paid $49,500,000.00 for Heritage, $11,000,000.00 for Red Hill, and $11,500,000.00 for Browning, for a total of $72,000,000.

21.     The outstanding balance of the indebtedness owed pursuant to the Southwind Loan Documents at the time of sale was $80,834,370.31. Therefore, as of March 6, 2008, approximately $8,834,370.00 remained due and owing to Lender on the Southwind Loan, together with the fees and costs associated with the foreclosure. Interest continues to accrue on the remaining balance (the "Southwind Deficiency").

### The Copper Canyon Default and Non-Judicial Foreclosure

22.     The Copper Canyon Loan matured on July 25, 2007. SunCal Copper Canyon failed to pay off the unpaid principal balance of $35,000,000.00 along with interest as required by the terms of the Copper Canyon Loan Documents. Consequently, Plaintiff sent SunCal Copper Canyon a Notice of Event of Default on July 27, 2007, informing SunCal Copper Canyon that all outstanding obligations due to Lender under the Copper Canyon Loan Documents were immediately owing to Lender, including interest at the Default Rate and all

other charges, fees, attorneys' fees and disbursements in connection therewith ("Copper Canyon Notice of Default).

23.     SunCal Copper Canyon failed to cure the default.

24.     A non-judicial foreclosure sale occurred on February 27, 2008 in Reno, Nevada, whereby the Copper Canyon property was sold.  Plaintiff bid on and obtained title to the property.  Plaintiff paid $37,631,425.48 for the property.

25.     The outstanding balance of the indebtedness owed pursuant to the Copper Canyon Loan Documents at the time of sale was $40,502,766.76.

26.     Consequently, as of February 28, 2008, approximately $2,871,341.28 remained due and owing to Lender on the Copper Canyon Loan, together with fees and costs associated with the foreclosure.  Interest continues to accrue on the remaining balance (the "Copper Canyon Deficiency").

**The Guarantees**

27.     The recitals of the Guarantees provide the backdrop for Defendant's guaranty obligations.  The Southwind Guaranty provides that it "is made and entered into by SCC ACQUISITIONS, INC., a California corporation ('Guarantor'), in favor of D.B. ZWIRN SPECIAL OPPORTUNITIES FUND, L.P., a Delaware limited partnership (together with its successors and assigns, 'Lender')."  In reliance on this guaranty and other representations discussed below, "Lender is prepared to make a revolving loan (the 'Loan') to SUNCAL-SOUTHWIND JV, LLC a Delaware limited liability company ('Borrower') in the aggregate principal amount of up to $75,000,000, subject to increase pursuant to the 'Loan Agreement' . . .

7

to be evidenced by a certain Revolving Promissory Note . . ." As security to Lender, "[r]epayment of the Note is secured from time to time by, inter alia, the Mortgages (and the Loan Agreements, the Mortgages, the Note, [and] this Guaranty. . . ." The Copper Canyon Guaranty contains similar language, but secured a loan of in the principal amount of $35,000,000. Defendant expressed a willingness to guaranty the Southwind and Copper Canyon Loans, in part because the "Guarantor will benefit from the making of the Loan and the financial accommodations extended to Borrower pursuant to the Loan Documents. . . ."

28.    Defendant's obligations to Plaintiff are absolute and clear under the Guarantees, which both provide that "[i]n consideration for the extension of credit . . . Guarantor does hereby unconditionally, absolutely and irrevocably guarantee to Lender, its successors and assigns, the due payment, fulfillment and performance of the 'Guaranteed Obligations,'" which includes "irrevocably and unconditionally" agreeing to cover "Guaranteed Obligations."

29.    "Guaranteed Obligations" is a defined term in both Guarantees, meaning: "the outstanding principal amount of the Loan, and all other amounts due and owing under the Loan Documents, together with reasonable attorneys' fees, court costs and costs of appeal . . . in the event . . . (e) Borrower . . . admits, in writing, its insolvency or inability to pay its debts as they become due. . . ." Section 1(b). Thus, SunCal Southwind and SunCal Copper Canyon triggered these guaranty obligations when they admitted in writing that they could not pay their debts as they became due and produced documents showing that their liabilities exceeded their assets (i.e., they were insolvent). [f]

---

[f]    In regard to Copper Canyon, Lender received cash flow projections and financial statements on August 9, 2007, indicating $3,000 in cash on hand, which was insufficient to service debt or pay the $500,000 to $700,000 of monthly expenses SunCal projected. In regard to the Southwind properties, Lender received financial projections on

8

30.     Further, Section 20 of each of the Guarantees provides that "Guarantor agrees to fully and punctually pay all costs and expenses, including, without limitation, reasonable attorneys' fees, court costs and costs of appeal, which Lender may incur in enforcing and collecting the Guaranteed Obligations.'"

31.     Pursuant to Section 12(c) of each of the Guarantees, the Guaranteed Obligations are not limited to the deficiency plus costs; rather, Lender is entitled to recover its full, actual loss regardless of the bid amounts or value of the secured property.

32.     Section 12(a) of both Guarantees also provides that

> Guarantor agrees that upon an Event of Default under the Loan Documents, Lender may elect to foreclose either nonjudicially or judicially against any real or personal property security (including, without limitation, the Collateral it holds for the obligations evidenced by the Note or any Guaranteed Obligations, or any part thereof, or accept an assignment of any such security in lieu of foreclosure, or compromise or adjust any part of such obligations, or make any other accommodation with Borrower or Guarantor, or exercise any other remedy against Borrower or any collateral or security. No such action by Lender will release or limit the liability of Guarantor to Lender, who shall remain liable under this Guaranty after the action, even if the effect of that action is to deprive Guarantor of the right to collect reimbursement from Borrower or any other person for any sums paid to Lender or

August 21, 2007, establishing the project was insolvent. In the case of both properties, Lender also was informed that required equity contributions to the borrowers would not be made, eliminating any prospect that the borrowers would be rendered solvent. Further, and in any event, because Lender's contractual request for financial information was rejected by SunCal (constituting a breach of contract), any requirement that Lender establish financial insolvency with documentation before enforcing its rights under the Guarantees has been excused. Indeed, to ensure that Plaintiff could monitor insolvency-related issues, Defendant warranted and represented it "is familiar with, and has independently reviewed the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment and performance of the indebtedness evidenced by the Note and the Guaranteed Obligations, and Guarantor assumes full responsibility for keeping fully informed as to such matters in the future; . . . ." Moreover, Defendant warranted, "All financial statements concerning Guarantor which have been or will hereafter be furnished by Guarantor or Borrower to Lender pursuant to the Loan Documents, have been or will be prepared in accordance with generally accepted accounting principles . . . [and] in all material respects, present fairly the financial condition of the Persons covered thereby as of the dates thereof and the results of their operations for the periods then ended."

Guarantor's rights of subrogation, contribution, or indemnity against Borrower or any other person.

33. To ensure the Guaranties provide proper recourse, the Guaranties makes clear it "is an irrevocable, absolute, continuing guaranty of payment and performance. . . ." Similarly, "It is the intent of Guarantor that the obligations and liabilities of Guarantor hereunder are absolute and unconditional under any and all circumstances . . . ." Consistent with its "absolute and unconditional" obligations to the Lender, the Guarantor represented and warranted to Lender that it "is and expect to be solvent at all times, and has and expects to have assets at all time, which, fairly valued, exceed his or its obligations, liabilities and debts, and has and expects to have property and assets at all times sufficient to satisfy and repay his or its obligations and liabilities."

34. Defendant represented and warranted in the Guarantees that "[I]f the Guaranteed Obligations, or any part thereof, are not punctually paid or performed, as the case may be, Guarantor shall, immediately on demand and without protest or notice of protest, pay the amount due thereon to Lender, at its address set forth above or as otherwise designated by Lender."

**Plaintiff's Demand to Defendant for Payment Under the Guarantees**

35. On May 23, 2008, Plaintiff sent a letter to Defendant demanding that Defendant honor its contractual guaranty obligations resulting from the non-judicial foreclosure sales of the Copper Canyon and Southwind properties that Lender pursued because Defendant's affiliates did not make good on their payment obligations. Plaintiff further informed Defendant in the May 23, 2008 letter that Defendant has guaranteed the payment of these obligations plus costs, and that these obligations were triggered when certain Defendant-related borrowing entities provided Plaintiff with documentation of their financial insolvency and refused to provided additional

documentation of such insolvency despite clear contractual obligations requiring such disclosure.
Defendant has refused to honor its contractual obligations under the Southwind and Copper
Canyon Guarantees.

## FIRST CAUSE OF ACTION

36.     Plaintiff repeats and realleges paragraphs 1 through paragraphs 34 above as if
fully set forth herein.

37.     As noted earlier herein, pursuant to the terms of the Southwind Guaranty,
Defendant unconditionally, absolutely, and irrevocably guaranteed to Lender the due payment,
fulfillment, and performance of the Guaranteed Obligations. "Guaranteed Obligations" are
defined in the Southwind Guaranty to include, among other things, the principal balance of the
Loan, and all other sums due under the Southwind Loan Documents. In this regard, Section 1(b)
of the Southwind Guaranty provides in relevant part that the Guaranteed Obligations include

> the outstanding principal amount of the Loan, and all other
> amounts due and owing under the Loan Documents, together with
> reasonable attorneys' fees, court costs and costs of appeal, incurred
> or to be incurred by Lender . . .

38.     Under the terms of the Southwind Guaranty, the Guarantor's duty to pay the
Guaranteed Obligations is triggered by several alternative events or circumstances, including but
not limited to, where the Borrower "admits, in writing, its insolvency or inability to pay its debts
as they become due." Southwind Guaranty § 1(b)(ii)(c).

39.     Before the Southwind Notice of Default, Borrower provided Lender with written
documentation indicating that Borrower was both insolvent (in that its liabilities exceeded its
assets) and had insufficient resources to pay its debts as they were coming due. In addition, on

11

or about August 21, 2007, in connection with a request from Borrower to restructure the Loan, Borrower provided Lender with a written analysis indicating that, unless the Southwind Loan were restructured, (a) Borrower would have to contribute $41 million to the project and (b) even with such restructuring, Borrower would suffer a net loss of almost $11 million. Borrower indicated that it was unable to contribute the $41 million, and therefore needed Lender's consent to a proposed restructuring. Borrower's written acknowledgments in connection with the requested restructuring constitute admissions of insolvency and/or of the inability to pay its debts as they are becoming due. Borrower rebuffed Plaintiff's request for additional information about Borrower's financial status, notwithstanding its clear contractual obligations to provide such information to Plaintiff.

40.    Defendant breached its obligations under the Southwind Guaranty because it failed to pay the amounts due and owing by Borrower to Lender as set forth herein.

41.    By reason of the foregoing, Plaintiff is entitled to a judgment against Defendant for the Southwind Deficiency, together with accrued and accruing interest thereon and all other amounts due and owing to Lender under the Southwind Loan Documents.

## SECOND CAUSE OF ACTION

42.    Plaintiff repeats and realleges paragraphs 1 through 40 above as if fully set forth herein.

43.    The Southwind Guaranty further provides that Lender may recover from Defendant, as guarantor, all expenses incurred by Lender in attempting to enforce Borrower's Obligations under the Loan Documents or Guarantor's Obligations to Lender under the Guaranty. Section 20 of the Southwind Guaranty provides in this regard:

> [g]uarantor agrees to fully and punctually pay all costs and
> expenses, including, without limitation, reasonable attorneys fees,
> court costs and costs of appeal, which Lender may incur in
> enforcing and collecting the Guaranteed Obligations.

44.    The Lender has incurred and will continue to incur attorneys' fees costs and expenses in prosecuting the foreclosure of liens on the Property and enforcing its rights under the Southwind Guaranty.

45.    By reason of the foregoing, Plaintiff is entitled to a judgment against Defendant for reimbursement of its attorneys' fees and expenses in an amount to be determined by the Court.

## THIRD CAUSE OF ACTION

46.    Plaintiff repeats and realleges paragraphs 1 through paragraphs 44 above as if fully set forth herein.

47.    As noted earlier herein, pursuant to the terms of the Copper Canyon Guaranty, Defendant unconditionally, absolutely, and irrevocably guaranteed to Lender the due payment, fulfillment, and performance of the Guaranteed Obligations. "Guaranteed Obligations" are defined in the Copper Canyon Guaranty to include, among other things, the principal balance of the Loan, and all other sums due under the Copper Canyon Loan Documents. In this regard, Section 1(b) of the Copper Canyon Guaranty provides in relevant part that the Guaranteed Obligations include

> the outstanding principal amount of the Loan, and all other
> amounts due and owing under the Loan Documents, together with
> reasonable attorneys' fees, court costs and costs of appeal, incurred
> or to be incurred by Lender . . .

13

48.    Under the terms of the Copper Canyon Guaranty, the Guarantor's duty to pay the Guaranteed Obligations is triggered by several alternative events or circumstances, including but not limited to, where the Borrower "admits, in writing, its insolvency or inability to pay its debts as they become due." Guaranty § 1(b)(ii)(g).

49.    Before the Copper Canyon Notice of Default, Borrower provided Lender with written documentation indicating that Borrower was both insolvent (in that its liabilities exceeded its assets) and had insufficient resources to pay its debts as they were coming due. In or around early August, 2007, Borrower provided Lender with cash-flow projections and a balance sheet as of July 31, 2007. These documents indicated that (a) Borrower had insufficient resources to pay the Loan at maturity; (b) Borrower would need an additional year to pay off the Copper Canyon Loan and (c) even with a one-year extension of the Loan, Borrower would have to obtain almost $30 million in new financing in order to complete the project. Borrower's written acknowledgments in the balance sheet and cash-flow projections constitute admissions of insolvency and/or of the inability to pay Borrower's debts as they are becoming due. Borrower rebuffed Plaintiff's request for additional information about Borrower's financial status, notwithstanding its clear contractual obligations to provide such information to Plaintiff.

50.    Defendant breached its obligations under the Copper Canyon Guaranty because it failed to pay the amounts due and owing by Borrower to Lender as set forth herein.

51.    By reason of the foregoing, Plaintiff is entitled to a judgment against Defendant for the Copper Canyon Deficiency, together with accrued and accruing interest thereon and all other amounts due and owing to Lender under the Copper Canyon Loan Documents:

## FOURTH CAUSE OF ACTION

52.     Plaintiff repeats and realleges paragraphs 1 through 50 above as if fully set forth herein.

53.     The Copper Canyon Guaranty further provides that Lender may recover from Defendant, as guarantor, all expenses incurred by Lender in attempting to enforce Borrower's Obligations under the Loan Documents or Guarantor's Obligations to Lender under the Guaranty. Section 20 of the Copper Canyon Guaranty provides in this regard:

> [g]uarantor agrees to fully and punctually pay all costs and expenses, including, without limitation, reasonable attorneys fees, court costs and costs of appeal, which Lender may incur in enforcing and collecting the Guaranteed Obligations.

54.     The Lender has incurred and will continue to incur attorneys' fees costs and expenses in prosecuting the foreclosure of liens on the Property and enforcing its rights under the Copper Canyon Guaranty.

55.     By reason of the foregoing, Plaintiff is entitled to a judgment against Defendant for reimbursement of its attorneys' fees and expenses in an amount to be determined by the Court.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

(a)     on the First Cause of Action, awarding Plaintiff a money judgment against Defendant, for the Southwind Deficiency, together with accrued and accruing interest through and including the date the indebtedness is repaid;

(b)     on the Second Cause of Action, awarding Plaintiff a judgment against Defendant for costs and expenses incurred by Plaintiff, including its reasonable attorneys' fees,

in (i) enforcing its rights under the Southwind Loan Documents against the Borrower and (ii) enforcing its rights against the Defendant under the Southwind Guaranty, all in an amount to be determined by the Court;

(c)    on the Third Cause of Action, awarding Plaintiff a money judgment against Defendant, for the Copper Canyon Deficiency, together with accrued and accruing interest through and including the date the indebtedness is repaid;

(d)    on the Fourth Cause of Action, awarding Plaintiff a judgment against Defendant, for costs and expenses incurred by Plaintiff, including its reasonable attorneys' fees, in (i) enforcing its rights under the Copper Canyon Loan Documents against the Borrower and (ii) enforcing its rights against the Defendant under the Copper Canyon Guaranty, all in an amount to be determined by the Court; and

(e)    awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          May 23, 2008

GREENBERG TRAURIG LLP
Counsel for Plaintiff D.B. Zwirn Special Opportunities
    Fund, L.P.


By: _____ /s/ Daniel R. Milstein____
        Steven Sinatra, Esq.
        Daniel R. Milstein, Esq.
        200 Park Avenue
        MetLife Building, 38th floor
        New York, New York 10166
        (212) 801-9200

**EXHIBIT A**

## CARVE OUT GUARANTY

THIS CARVE OUT GUARANTY (this "Guaranty"), dated as of May 1, 2006, is made and entered into by SCC ACQUISITIONS, INC., a California corporation ("Guarantor"), in favor of D.B. ZWIRN SPECIAL OPPORTUNITIES FUND, L.P., a Delaware limited partnership (together with its successors and assigns, "Lender").

WHEREAS, Lender is prepared to make a revolving loan (the "Loan") to SUNCAL-SOUTHWIND IV, LLC a Delaware limited liability company ("Borrower") in the aggregate principal amount of up to $75,000,000, subject to increase pursuant to the "Loan Agreement" (as hereinafter defined), to be evidenced by a certain Revolving Promissory Note in the same principal amount given by Borrower to Lender (the "Note") in accordance with the terms and conditions of a certain Loan and Security Agreement (the "Loan Agreement"; capitalized terms not otherwise defined herein shall have the same meanings as are set forth in the Loan Agreement) among Borrower, Guarantor, certain Borrower Entities and Lender. Repayment of the Note is secured from time to time by, inter alia, the Mortgages (and the Loan Agreement, the Mortgages, the Note, this Guaranty and any other documents or instruments given by Borrower or others and accepted by Lender for the purposes of evidencing, securing, or guaranteeing the Loan are hereinafter referred to collectively as the "Loan Documents"); and

WHEREAS, as a condition to making the Loan to Borrower, Lender requires Guarantor to enter into this Guaranty; and

WHEREAS, Guarantor will benefit from the making of the Loan and the financial accommodations extended to Borrower pursuant to the Loan Documents; and

WHEREAS, to induce Lender to consummate the above described transaction, Guarantor has agreed to enter into this Guaranty;

NOW, THEREFORE, in consideration for the extension of credit and other good and valuable consideration, the receipt, sufficiency and adequacy of which are hereby acknowledged, and to induce Lender to extend credit to Borrower, Guarantor does hereby unconditionally, absolutely and irrevocably guarantee to Lender, its successors and assigns, the due payment, fulfillment and performance of the "Guaranteed Obligations" (as hereinafter defined). Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for and shall pay, the Guaranteed Obligations as primary obligor, this Guaranty being upon the following terms and conditions:

1.    Definitions.  All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Instrument. As used herein, the term "Guaranteed Obligations" means:

(a)    any actual loss, actual liability, actual damage, actual cost or actual expense (including reasonable attorneys' fees, court costs and costs of appeal) incurred or to be incurred by Lender to the extent resulting from or in connection with:

(i)    any application or appropriation of any insurance proceeds, condemnation proceeds or any other sums in violation of the terms of the Loan Documents, including, without limitation, the distribution by Borrower, its members or Guarantor of any sums in violation of any provision of any of the Loan Documents and the distribution by Borrower, its members or Guarantor of insurance, condemnation proceeds or other sums in violation of any provision of any of the Loan Documents;

(ii)    any physical waste by Borrower with respect to the Property;

(iii)    the failure of Borrower to deposit (or cause to be deposited) any and all required sums into the appropriate account pursuant to the Loan Documents, including, without limitation, any failure of the Borrower or any Property Owner to remit Net Cash Flow After Debt Service, to Lender, in violation of Section 2.8(d) of the Loan Agreement;

(iv)    fraud, material misrepresentation or willful misconduct committed by Borrower, or Guarantor (or any such party's respective agents or employees) in connection with the Loan or any Loan Document;

(v)    any obligations and liabilities of Borrower or Guarantor arising under the terms and provisions of the Environmental Agreement; and

(vi)    the failure to pay charges for labor or materials that create liens on the Property to the extent such liens are not bonded over or released in accordance with the terms of the Loan Documents and to the extent of available funds to pay any such charges.

(b).    the outstanding principal amount of the Loan, and all other amounts due and owing under the Loan Documents, together with reasonable attorneys' fees, court costs and costs of appeal, incurred or to be incurred by Lender resulting from or in connection with: (i) any breach of transfer restrictions, single purpose covenants and financing restrictions as set forth in Sections 5(d), 5(ll) and 5(dd) of the Instrument, or (ii) in the event (a) Borrower or Guarantor files a voluntary petition under the United States Bankruptcy Code or any other federal or state bankruptcy or insolvency law, or (b) any Affiliate files, or joins in the filing of, an involuntary petition against Borrower or Guarantor under the Bankruptcy Code or any other federal or state bankruptcy or insolvency law, or (c) Borrower or Guarantor files an answer consenting to or acquiescing in any involuntary petition filed against it or against Borrower or Guarantor, by any other Person (excluding Lender or its affiliates) under the Bankruptcy Code or any other federal or state bankruptcy or insolvency law, or (d) any Affiliate consents to or acquiesces in or joins in an application for the appointment of a custodian, receiver, trustee or examiner for Borrower or Guarantor or any portion of the Collateral (other than in any such application made by Lender or its affiliates), or (e) Borrower makes an assignment for the benefit of creditors, or admits, in writing, its insolvency or inability to pay its debts as they become due, or (f) Guarantor or Borrower or any Affiliate, in connection with any enforcement action or exercise or assertion of any right or remedy by or on behalf of Lender under or in connection with this Guaranty, the Note, or any other Loan Document, seeks a defense, judicial intervention or injunctive or other equitable relief of any kind or asserts in a pleading filed in connection with a judicial proceeding

-2-

any defense against Lender or any right in connection with any security for the Loan which the court in any such action or proceeding, determines that Guarantor's or Borrower's defense or such request for judicial intervention or injunctive or other equitable relief is (i) unwarranted or without merit and (ii) was not brought in good faith.

2.     Continuing Guaranty.  This is an irrevocable, absolute, continuing guaranty of payment and performance.  This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to the Guaranteed Obligations arising or created after any attempted revocation by Guarantor.  It is the intent of Guarantor that the obligations and liabilities of Guarantor hereunder are absolute and unconditional under any and all circumstances and that until the Guaranteed Obligations are fully, finally and indefeasibly satisfied, such obligations and liabilities shall not be discharged or released in whole or in part, by any act or occurrence which might, but for the provisions of this Guaranty, be deemed a legal or equitable discharge or release of Guarantor.  Each and every default in payment of any amounts due or performance of any obligation required under this Guaranty shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises, or, in the discretion of Lender, may be brought as a consolidated suit or suits.

3.     Waivers.

         (a)     Guarantor hereby assents to all terms and agreements heretofore or hereafter made by Borrower with Lender, and, except as such waiver may be expressly prohibited by law, waives notice of:

                  (i)     Any loans or advances made by Lender to Borrower under the Loan Documents;

                  (ii)     The present existence or future incurring of any of the indebtedness pursuant to the Note or any future modifications thereof or any terms or amounts thereof or any Guaranteed Obligations or any terms or amounts thereof;

                  (iii)     The obtaining or release of any guaranty or surety agreement (in addition to this Guaranty), pledge, assignment, or other security for any of the indebtedness evidenced by the Note, or any Guaranteed Obligations; and

                  (iv)     Notice of protest, default, notice of intent to accelerate and notice of acceleration in relation to any instrument relating to the indebtedness evidenced by the Note or any Guaranteed Obligations.

         (b)     Guarantor hereby waives any rights and defenses which such Guarantor might have as a result of any representation, warranty or statement made by Lender or its agents to such Guarantor in order to induce Guarantor to execute this Guaranty and further waives any other circumstance that might otherwise constitute a legal or equitable discharge or defense of the Guarantor.

(c)    Upon a default by Borrower, Lender in its sole discretion, without prior notice to or consent of Guarantor, may elect to: (i) foreclose either judicially or nonjudicially against any Collateral it may hold as security for the Loan, (ii) accept a transfer of any such security in lieu of foreclosure, (iii) compromise or adjust the Loan or any part of it or make any other accommodation with Borrower or Guarantor, or (iv) exercise any other remedy against Borrower or any security. No such action by Lender shall release or limit the liability of Guarantor, who shall remain liable under this Guaranty after the action, even if the effect of the action is to deprive Guarantor of any subrogation rights, rights of indemnity, or other rights to collect reimbursement from Borrower for any sums paid to Lender, whether contractual or arising by operation of law or otherwise. Guarantor expressly agrees that under no circumstances shall it be deemed to have any right, title, interest or claim in or to any real or personal property to be held by Lender or any third party after any foreclosure or transfer in lieu of foreclosure of any security for the Loan.

(d)    Regardless of whether Guarantor may have made any payments to Lender, until the Loan is indefeasibly paid in full and except as set forth in Section 10 hereof, Guarantor hereby waives: (i) all rights of subrogation, indemnification, contribution and any other rights to collect reimbursement from Borrower or any other party for any sums paid to Lender, whether contractual or arising by operation of law (including the United States Bankruptcy Code or any successor or similar statute) or otherwise, (ii) all rights to enforce any remedy that Lender may have against Borrower, and (iii) all rights to participate in any security now or later to be held by Lender for the Loan.

(e)    Guarantor further waives any defense to the recovery by Lender against Guarantor of any deficiency or otherwise to the enforcement of this Guaranty or any security for this Guaranty based upon Lender's election of any remedy against Guarantor or Borrower, including the defense to enforcement of this Guaranty by virtue of any "anti-deficiency" statutes and their application following a non-judicial foreclosure sale.

(f)    Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guarantied obligation may adversely affect Guarantor's right of subrogation and reimbursement against Borrower.

(g)    Guarantor waives any defenses Guarantor may have by reason of an election of remedies by Lender.

4.    Events and Circumstances Not Reducing or Discharging Guarantor's Obligations. Guarantor hereby consents and agrees to each of the following, and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any rights and defenses (excluding the rights to notice, if any, as herein provided or as required by law) which Guarantor might have otherwise as a result of or in connection with any of the following:

(a)    any and all extensions, modifications, adjustments, indulgences, forbearances or compromises that might be granted or given by Lender to Borrower, including, without limitation, any and all amendments, modifications, supplements, extensions or restatements of any of the Loan Documents;

(b)    the insolvency, bankruptcy, rearrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower or any other party at any time liable for the payment of all or part of the indebtedness evidenced by the Note or any Guaranteed Obligations; or any dissolution, consolidation or merger of Borrower or Guarantor, or any sale, lease or transfer of any or all of the assets of Borrower or Guarantor, or any changes in the ownership, partners or members Borrower or Guarantor;

(c)    the invalidity, illegality or unenforceability of all or any part of the indebtedness evidenced by the Note or any Guaranteed Obligations, or any document or agreement executed in connection with the indebtedness evidenced by the Note or any Guaranteed Obligations, for any reason whatsoever, including, without limitation, the fact that the indebtedness evidenced by the Note, or any part thereof exceeds the amount permitted by law, the act of creating the indebtedness evidenced by the Note or any Guaranteed Obligations or any part thereof is *ultra vires*, the representatives executing the Note or the other Loan Documents or otherwise creating the indebtedness evidenced by the Note or any Guaranteed Obligations acted in excess of their authority, the indebtedness evidenced by the Note violates applicable usury laws, Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the indebtedness evidenced by the Note or any Guaranteed Obligations wholly or partially uncollectible from Borrower, the creation, performance or repayment of the indebtedness evidenced by the Note or any Guaranteed Obligations is illegal, uncollectible, legally impossible or unenforceable, or any of the other Loan Documents pertaining to the indebtedness evidenced by the Note or any Guaranteed Obligations are irregular or not genuine or authentic;

(d)    the taking or accepting of any other security, collateral or guaranty, or other assurance of the payment, for all or any of the indebtedness evidenced by the Note or any Guaranteed Obligations;

(e)    any release, surrender or exchange of any collateral, property or security, at any time existing in connection with, or assuring or securing payment of, all or any part of the indebtedness evidenced by the Note or the Guaranteed Obligations;

(f)    the failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of such collateral, property or security;

(g)    the fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the indebtedness evidenced by the Note or Guaranteed Obligations shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being

recognized and agreed by Guarantor that Guarantor is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectibility or value of any of the collateral for the indebtedness evidenced by the Note or the Guaranteed Obligations;

(h)    any payment by Borrower to Lender is held to constitute a preference under the Bankruptcy Code, or for any reason Lender is required to refund such payment or pay such amounts to such Borrower, or any other Person; or

(i)    any other action taken or omitted to be taken with respect to the Loan Documents, the indebtedness evidenced by the Note or the Guaranteed Obligations, the security and collateral therefor, whether or not such action or omission prejudices Guarantor or increases the likelihood that Guarantor will be required to pay the Guaranteed Obligations.

It is the unambiguous and unequivocal intention of Guarantor that Guarantor shall be obligated to pay and perform the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action or omission whatsoever, whether contemplated or uncontemplated, and whether or not otherwise or particularly described herein, except for the full and final payment and satisfaction of all Guaranteed Obligations.

5.    Payment by Guarantor.  If the Guaranteed Obligations, or any part thereof, are not punctually paid or performed, as the case may be, Guarantor shall, immediately on demand and without protest or notice of protest, pay the amount due thereon to Lender, at its address set forth above or as otherwise designated by Lender.  Such demand(s) may be made at any time coincident with or after the time for payment or performance of all or part of the Guaranteed Obligations.  Such demand shall be deemed made if given in accordance with Section 17 hereof.  It shall not be necessary for Lender, in order to enforce such payment or performance by Guarantor, first to institute suit or exhaust its remedies against Borrower, or others liable to pay or perform such Guaranteed Obligations, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Obligations.  Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the indebtedness evidenced by the Note or Guaranteed Obligations.  No set-off, counterclaim, reduction, or diminution of any obligations, or any defense of any kind or nature which Guarantor has or may hereafter have against Borrower or Lender shall be available hereunder to Guarantor.

6.    Indebtedness or Other Obligations of Guarantor.  If Guarantor is or becomes liable for any indebtedness owed by Borrower to Lender by endorsement or otherwise than under this Guaranty, such liability shall not be in any manner impaired or affected by this Guaranty, and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor.  The exercise by Lender of any right or remedy hereunder or under any other instrument or at law or in equity shall not preclude the concurrent or subsequent exercise of any other instrument or remedy at law or in equity and shall not preclude the concurrent or subsequent exercise of any other right or remedy.  Further, without in any way diminishing or limiting the generality of the foregoing, it is specifically understood and agreed that this Guaranty is given by Guarantor as an additional guaranty to any and all guarantees

hereafter executed and delivered to Lender by Guarantor in favor of Lender relating to the indebtedness and obligations of Borrower to Lender, and nothing herein shall ever be deemed to replace or be in lieu of any other of such previous or subsequent guarantees.

7.    Application of Payments.  If, at any time, there is any indebtedness or obligations (or any portion thereof) of Borrower to Lender which is not guaranteed by Guarantor, Lender, without in any manner impairing its rights hereunder, may, at its option, apply all amounts realized by Lender from collateral or security held by Lender first to the payment of such unguaranteed indebtedness or obligations, with the remaining amounts, if any, to then be applied to the payment of the indebtedness or obligations guaranteed by Guarantor.

8.    Suits, Releases of Settlements with Others.  Guarantor agrees that Lender, in its sole discretion, may bring suit against any other guarantor without impairing the rights of Lender or its successors and assigns against Guarantor or any other guarantor of the Guaranteed Obligations; and Lender may settle or compromise with such other guarantor for such sum or sums as Lender may see fit and release such other guarantor from all further liability to Lender, all without impairing its rights against Guarantor.

9.    Warranties and Representations.  Guarantor warrants and represents, as follows:

(a)    Guarantor has received, or will receive, direct or indirect benefit from the making of this Guaranty, the making of the Loan and the entering into and execution of the Loan Documents in connection therewith;

(b)    Guarantor is familiar with, and has independently reviewed the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment and performance of the indebtedness evidenced by the Note and the Guaranteed Obligations, and Guarantor assumes full responsibility for keeping fully informed as to such matters in the future; however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty;

(c)    All financial statements concerning Guarantor which have been or will hereafter be furnished by Guarantor or Borrower to Lender pursuant to the Loan Documents, have been or will be prepared in accordance with generally accepted accounting principles in the United States of America, consistently applied, as of the date in question (except as disclosed therein, to the extent Lender approves such disclosure) and, in all material respects, present fairly the financial condition of the Persons covered thereby as of the dates thereof and the results of their operations for the periods then ended;

(d)    No ERISA Affiliate of Guarantor maintains or contributes to, or has any obligation under, any employee benefit plans.  Guarantor is not an "employee benefit plan" (within the meaning of section 3(3) of ERISA) to which ERISA applies and Guarantor's assets do not constitute plan assets.  No actions, suits, or claims under any laws and regulations promulgated pursuant to ERISA are pending or, to Guarantor's knowledge, threatened against Guarantor.  Guarantor has no knowledge of any material liability incurred by Guarantor which

-7-

remains unsatisfied for any taxes or penalties with respect to any employee benefit plan or any Multiemployer Plan, or of any lien which has been imposed on Guarantor's assets pursuant to section 412 of the Code or sections 302 or 4068 of ERISA. The Loan, the execution, delivery and performance of the Loan Documents and the transactions contemplated by this Guaranty are not a non-exempt prohibited transaction under ERISA; and

(e)    As of the date hereof, and after giving effect to this Guaranty and the contingent obligations evidenced hereby, Guarantor is and expects to be solvent at all times, and has and expects to have assets at all times which, fairly valued, exceed his or its obligations, liabilities and debts, and has and expects to have property and assets at all times sufficient to satisfy and repay his or its obligations and liabilities.

10.    Subordination.  If, for any reason Borrower is now or hereafter becomes indebted to Guarantor (such indebtedness and all interest thereon being referred to as the "**Affiliated Debt**"), such Affiliated Debt shall, at all times, be subordinate in all respects to the full payment and performance of the obligations evidenced by the Note, and Guarantor shall not be entitled to enforce or receive payment thereof until all of the obligations evidenced by the Note have been fully paid. Guarantor agrees that any liens, mortgages, deeds of trust, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Affiliated Debt shall be and remain subordinate and inferior to any liens, security interests, judgment liens, charge or other encumbrances upon Borrower's assets securing the payment of the obligations evidenced by the Note and Guaranteed Obligations, and without the prior written consent of Lender, Guarantor shall not exercise or enforce any creditor's rights of any nature against Borrower to collect the Affiliated Debt (other than demand payment therefor). In the event of the receivership, bankruptcy, reorganization, arrangement, debtor's relief or other insolvency proceedings involving Borrower as a debtor, Lender shall have the right and authority, either in its own name or as attorney-in-fact for Guarantor, to file such proof of debt claim, petition or other documents and to take such other steps as are necessary to prove its rights hereunder.

11.    Waiver of Subrogation.  Notwithstanding any other provision of this Guaranty to the contrary, until the Loan is indefeasibly paid in full, Guarantor hereby waives any claim or other rights which Guarantor may now have or hereafter acquire against Borrower or any other guarantor of all or any of the obligations that arise from the existence or performance of Guarantor's obligations under this Guaranty (all such claims and rights are referred to as "**Guarantor's Conditional Rights**"), including, without limitation, any right of subrogation, reimbursement, exoneration, contribution, or indemnification, any right to participate in any claim or remedy of Lender against Borrower or any security or collateral which Lender now has or hereafter acquires, whether or not such claim, remedy or right arises in equity or under contract, statute (including the Bankruptcy Code or any successor or similar statute) or common law, by any payment made hereunder or otherwise, including without limitation, the right to take or receive from Borrower, directly or indirectly, in cash or other property or by setoff or in any other manner, payment or security on account of such claim or other rights. If, notwithstanding the foregoing provisions, any amount shall be paid to Guarantor on account of Guarantor's

-8-

Conditional Rights and either (i) such amount is paid to Guarantor at any time when the Guaranteed Obligations shall not have been paid or performed in full, or (ii) regardless of when such amount is paid to Guarantor, any payment made by Borrower to Lender is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid by Lender or paid over to a trustee, receiver or any other entity, whether under any bankruptcy act or otherwise (such payment, a "Preferential Payment"), then such amount paid to Guarantor shall be held in trust for the benefit of Lender and shall forthwith be paid to Lender to be credited and applied upon the Guaranteed Obligations, whether matured or unmatured, in such order as Lender, in its sole and absolute discretion, shall determine. The foregoing waivers shall be effective until the Guaranteed Obligations have been paid and performed in full.

12.    Impairment of Subrogation Rights; Waivers of Rights Under the Anti-Deficiency Rules.

(a)    Guarantor agrees that upon an Event of Default under the Loan Documents, Lender may elect to foreclose either nonjudicially or judicially against any real or personal property security (including, without limitation, the Collateral) it holds for the obligations evidenced by the Note or any Guaranteed Obligations, or any part thereof, or accept an assignment of any such security in lieu of foreclosure, or compromise or adjust any part of such obligations, or make any other accommodation with Borrower or Guarantor, or exercise any other remedy against Borrower or any collateral or security. No such action by Lender will release or limit the liability of Guarantor to Lender, who shall remain liable under this Guaranty after the action, even if the effect of that action is to deprive Guarantor of the right to collect reimbursement from Borrower or any other person for any sums paid to Lender or Guarantor's rights of subrogation, contribution, or indemnity against Borrower or any other person. Without limiting the foregoing, it is understood and agreed that on any foreclosure or assignment in lieu of foreclosure of any collateral or security held by Lender, such security will no longer exist and that any right that Guarantor might otherwise have, on full payment of the Guaranteed Obligations by Guarantor to Lender, to participate in any such security or to be subrogated to any rights of Lender with respect to any such security will be nonexistent; nor shall Guarantor be deemed to have any right, title, interest or claim under any circumstances in or to any real or personal property held by Lender or any third party following any foreclosure or assignment in lieu of foreclosure of any such security.

(b)    Without limiting the foregoing, Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement.

(c)    Guarantor intentionally, freely, irrevocably and unconditionally waives and relinquishes all rights which may be available to it under any provision of applicable law to limit the amount of any deficiency judgment or other judgment which may be obtained against Guarantor under this Guaranty to not more than the amount by which the unpaid Guaranteed Obligations plus all other indebtedness due from Borrower under the Loan Documents exceeds

the fair market value or fair value of any real or personal property securing said obligations and any other indebtedness due from Borrower under the Loan Documents, including, without limitation, all rights to an appraisal of, judicial or other hearing on, or other determination of the value of said property. Guarantor acknowledges and agrees that, as a result of the foregoing waiver, Lender may be entitled to recover from Guarantor an amount which, when combined with the value of any real or personal property foreclosed upon by Lender (or the proceeds of the sale of which have been received by Lender) and any sums collected by Lender from Borrower or other Persons, might exceed the amount of the Guaranteed Obligations plus all other indebtedness due from Borrower under the Loan Documents.

(d)    Guarantor understands and agrees that Lender may have the ability to pursue Guarantor for a judgment on the Guaranteed Obligations without having first foreclosed on the Collateral which is security for such Guaranteed Obligations; that Lender may have the ability to sue Guarantor for a deficiency judgment on the Guaranteed Obligations after a non-judicial foreclosure sale or, regardless of any election of remedies by Lender, if the Guaranteed Obligations or any of the other indebtedness of Borrower to Lender under the Loan Documents is considered to have been provided by a vendor to a buyer and to evidence part of the purchase price for the Collateral, and that Lender may be able to recover from Borrower an amount which, when combined with the fair market value of the property acquired by Lender in a foreclosure sale or the proceeds of the foreclosure sale received by Lender, might exceed the amount of the Guaranteed Obligations due and owing by Guarantor and the amounts payable under the Loan Documents.

(e)    Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies by Lender, such as a nonjudicial foreclosure with respect to security for the guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal.

Notwithstanding the foregoing or any provisions of Section 3(c) hereof, nothing contained in this Guaranty shall in any way be deemed to imply that any other state's law other than the law of the State of New York shall govern this Guaranty or any of the Loan Documents in any respect, except as expressly set forth therein, including with respect to the exercise of Lender's remedies under the Loan Documents.

Notwithstanding any other provision herein to the contrary, upon the indefeasible payment in full of the Note, Guarantor shall have all rights of subrogation available at law or in equity.

13.    Benefit.  This Guaranty is for the benefit of Lender, its successors and assigns, and in the event of an assignment by Lender, its successors and assigns, of the obligations evidenced by the Note, or any part or parts thereof, the rights and benefits hereunder, to the extent applicable to the obligations so assigned, may be transferred with such obligations.

14.    No Release if Preference, Refund, Etc.  In the event any payment by Borrower to Lender is determined to be a preferential payment under any applicable bankruptcy or insolvency

-10-

laws, or if for any reason Lender is required to refund part or all of any payment or pay the amount thereof to any other party, such repayment by Lender to Borrower shall not constitute a release of Guarantor from any liability hereunder, and Guarantor agrees to pay such amount to Lender upon demand to the extent such amount constitutes a Guaranteed Obligation.

15.     Right of Set-Off.  In addition to any other rights now or hereafter granted under applicable law and not by way of limitation of any such rights, upon Guarantor's failure to pay the Guaranteed Obligations, after demand by Lender, Lender is hereby authorized at any time and from time to time, without notice to Guarantor or to any other person, to set off and to appropriate and to apply any and all deposits (general or special) and any other indebtedness at any time held or owing by Lender to or for the credit or the account of Guarantor against or on account of the obligations evidenced by the Note.

16.     GOVERNING LAW.  PURSUANT TO SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK, GUARANTOR AGREES THAT THIS GUARANTY AND ALL RIGHTS, OBLIGATIONS AND LIABILITIES HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

17.     Notices.  Unless otherwise specifically provided herein, any notice or other communication required or permitted to be given shall be in writing addressed to the respective party as set forth in the Instrument and may be personally served, telecopied (with request for confirmation) or sent by overnight courier service or United States registered mail return receipt requested, postage prepaid.  Any notice so given shall be deemed effective upon delivery or on refusal or failure of delivery during normal business hours.  Notices shall be addressed to the parties at the following addresses as the party addressed shall have previously designated by written notice to the serving party, in accordance with this Section 17:

| | |
|---|---|
| Guarantor: | SCC Acquisitions, Inc. |
| | 2392 Morse Avenue |
| | Irving, California 92614 |
| | Attention: Bruce V. Cook, Esq. |
| | Telephone: (949) 777-4000 |
| | Facsimile: (949) 777-4280 |
| | |
| With a copy to: | Voss, Cook & Thel LLP |
| | 895 Dove Street |
| | Newport Beach, California 92660 |
| | Attention: David Linker, Esq. |
| | Telephone: (949) 435-0225 |
| | Facsimile: (949) 435-0226 |
| | |
| Lender: | D.B. Zwirn Special Opportunities Fund, L.P. |
| | 745 Fifth Avenue, 18th Floor |

New York, New York 10151
Attention: Suzanne Kelley
Telephone: (646) 720-9148
Facsimile: (646) 344-9885

With a copy to:      Katten Muchin Rosenman LLP
525 West Monroe
Chicago, Illinois 60661
Attention: Andrew D. Small, Esq.
Telephone: (312) 902-5489
Facsimile: (312) 577-8662

18.    Consent of Jurisdiction/Service of Process. IN ACCORDANCE WITH SECTION 5-1402 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK, GUARANTOR HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE COUNTY OF NEW YORK, STATE OF NEW YORK AND IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S ELECTION, ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE OTHER LOAN DOCUMENTS SHALL BE LITIGATED IN SUCH COURTS. GUARANTOR ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE NONEXCLUSIVE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS, AND IRREVOCABLY AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY IN CONNECTION WITH THIS GUARANTY, THE NOTE, SUCH OTHER LOAN DOCUMENTS OR SUCH OBLIGATION. GUARANTOR ACKNOWLEDGES AND AGREES THAT SERVICE OF PROCESS IN ANY SUCH ACTION, SUIT OR PROCEEDING WILL BE DEEMED EFFECTIVE, SERVICE OF PROCESS ON GUARANTOR IF PERSONALLY SERVED OR SERVED IN ACCORDANCE WITH SECTION 17 ABOVE OR AT SUCH OTHER ADDRESS AS SUCH GUARANTOR MAY HAVE FURNISHED AS TO ITSELF TO THE SERVING PARTY BY LIKE NOTICE, OR TO THE LAST KNOWN ADDRESS OF SUCH GUARANTOR PROVIDED THEREUNDER.

19.    WAIVER OF JURY TRIAL. GUARANTOR AND LENDER HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS GUARANTY, ANY OF THE LOAN DOCUMENTS, OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION AND THE RELATIONSHIP THAT IS BEING ESTABLISHED. GUARANTOR AND LENDER ALSO WAIVE ANY BOND OR SURETY OR SECURITY UPON SUCH BOND WHICH MIGHT, BUT FOR THIS WAIVER, BE REQUIRED OF GUARANTOR OR LENDER. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT

CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. GUARANTOR AND LENDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THE WAIVER IN ENTERING INTO THIS GUARANTY AND THAT EACH WILL CONTINUE TO RELY ON THE WAIVER IN THEIR RELATED FUTURE DEALINGS. GUARANTOR AND LENDER FURTHER WARRANT AND REPRESENT THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE LOAN DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE LOAN. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

20.    Expenses. Guarantor agrees to fully and punctually pay all costs and expenses, including, without limitation, reasonable attorneys' fees, court costs and costs of appeal, which Lender may incur in enforcing and collecting the Guaranteed Obligations.

21.    Conflict of Law. If, for whatever reason, a court of competent jurisdiction determines that this Guaranty shall be governed by California law, the provisions set forth on Exhibit A hereto shall be deemed incorporated herein by reference as additional provisions hereto, except to the extent that the provisions set forth on Exhibit A are inconsistent with the terms of this Guaranty, in which case, the terms set forth in Exhibit A shall govern.

22.    Joint and Several Liability. In the event that this Guaranty is executed by more than one party a Guarantor, the liability of such parties is joint and several. In addition, Guarantors' obligations hereunder are joint and several with any other person now or hereafter obligated under the Loan Documents. A separate action or actions may be brought and prosecuted against any one or more of Guarantors, whether or not action is brought against any other person whether or not any other person is joint in such action or actions.

*[Remainder of Page Intentionally Left Blank;
Signature Page Follows]*

-13-

IN WITNESS WHEREOF, the undersigned has executed this Guaranty as of the day and year first above written.

GUARANTOR:

SCC ACQUISITIONS, INC.,
a California corporation

By: _____
Name: Stephen Z. Elieff
Title: Executive Vice President

## EXHIBIT A

(1)     Guarantor hereby waives any and all benefits and defenses under California Civil Code Section 2810 and agree that by doing so Guarantor shall be liable even if Borrower had no liability at the time of execution of the Note or any other Loan Document, or thereafter ceases to be liable.  Guarantor hereby waives any and all benefits and defenses under California Civil Code Section 2809 and agree that by doing so Guarantor's liability may be larger in amount and more burdensome than that of Borrower, Guarantor waives all rights to require Lender to pursue any other remedy it may have against Borrower, or any member of Borrower, including any and all benefits under California Civil Code Section 2845, 2849 and 2850.  Guarantor further waives any rights, defenses and benefits that may be derived from Sections 2787 to 2855, inclusive, of the California Civil Code or comparable provisions of the laws of any other jurisdiction and further waive all other suretyship defenses Guarantor would otherwise have under the laws of California or any other jurisdiction.

(2)     Upon a default by any Borrower, Lender in its sole discretion, without prior notice to or consent of Guarantor, may elect to:  (i) foreclose either judicially or nonjudicially against any real or personal property security it may hold for the Loan, (ii) accept a transfer of any such security in lieu of foreclosure, (iii) compromise or adjust the Loan or any part of it or make any other accommodation with any Borrower or Guarantor, or (iv) exercise any other remedy against any Borrower or any security.  No such action by Lender shall release or limit the liability of Guarantor, who shall remain liable under this Guaranty after the action, even if the effect of the action is to deprive Guarantor of any subrogation rights, rights of indemnity, or other rights to collect reimbursement from Borrower for any sums paid to Lender, whether contractual or arising by operation of law or otherwise.  Guarantor expressly agrees that, under no circumstances shall they be deemed to have any right, title, interest or claim in or to any real or personal property to be held by Lender or any third party after any foreclosure or transfer in lieu of foreclosure of any security for the Loan.

(3)     Regardless of whether Guarantor may have made any payments to Lender, Guarantor hereby waives:  (A) all rights of subrogation, indemnification, contribution and any other rights to collect reimbursement from any Borrower or any other party for any sums paid to Lender, whether contractual or arising by operation of law (including the United States Bankruptcy Code or any successor or similar statute) or otherwise, (B) all rights to enforce any remedy that Lender may have against any Borrower, and (C) all rights to participate in any security now or later to be held by Lender for the Loan.  The waivers given in this subsection (3) shall be effective until the Loan has been paid and performed in full.

(4)     Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guarantied obligation, has destroyed Guarantor's rights of subrogation and reimbursement against any Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.  Guarantor further waives any right to a fair value hearing under California Code of Civil Procedure Section 580a, or any other similar law, to determine the size of any deficiency owing (for which Guarantor would be liable hereunder) following a non-judicial foreclosure sale.

(5)    Guarantor waives all rights and defenses arising out of any failure of the Lender to disclose to the Guarantor any information relating to the financial condition, operations, properties or prospects of Borrower now or in the future known to the Lender (Guarantor waiving any duty on the part of the Lender to disclose such information).

**EXHIBIT B**

## CARVEOUT GUARANTY

THIS CARVEOUT GUARANTY (this "Guaranty"), dated as of July ___, 2005, is made and entered into by SCC ACQUISITIONS, INC., a California corporation ("Guarantor"), in favor of D.B. ZWIRN SPECIAL OPPORTUNITIES FUND, L.P., a Delaware limited partnership (together with its successors and assigns, "Lender").

WHEREAS, Lender is prepared to make a loan (the "Loan") to Suncal Copper Canyon LLC, a Delaware limited liability company ("Borrower") in the principal amount of $35,000,000, to be evidenced by a certain Promissory Note in the same principal amount given by Borrower to Lender (the "Note") and secured by, among other things, a certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Instrument") made by Borrower to Lender (the Instrument, the Note, this Guaranty and any other documents or instruments given by Borrower or others and accepted by Lender for the purposes of evidencing, securing, or guaranteeing the Loan are hereinafter referred to collectively as the "Loan Documents"); and

WHEREAS, as a condition to making the Loan to Borrower, Lender requires Guarantor to enter into this Guaranty; and

WHEREAS, Guarantor will benefit from the making of the Loan and the financial accommodations extended to Borrower pursuant to the Loan Documents; and

WHEREAS, to induce Lender to consummate the above described transaction, Guarantor has agreed to enter into this Guaranty;

NOW, THEREFORE, in consideration for the extension of credit and other good and valuable consideration, the receipt, sufficiency and adequacy of which are hereby acknowledged, and to induce Lender to extend credit to Borrower, Guarantor does hereby unconditionally, absolutely and irrevocably guarantee to Lender, its successors and assigns, the due payment, fulfillment and performance of the "Guaranteed Obligations" (as hereinafter defined). Guarantor, hereby irrevocably and unconditionally covenants and agrees that it is liable for and shall pay, the Guaranteed Obligations as primary obligor, this Guaranty being upon the following terms and conditions:

1.      Definitions. All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Instrument. As used herein, the term "Guaranteed Obligations" means:

(a)     any actual loss, actual liability, actual damage, actual cost or actual expense (including reasonable attorneys' fees, court costs and costs of appeal) incurred or to be incurred by Lender to the extent resulting from or in connection with:

(i)     any application or appropriation of any insurance proceeds, condemnation proceeds or any other sums in violation of the terms of the Loan Documents, including, without limitation, the distribution by Borrower, its members or Guarantor of any sums in violation of any provision of any of the Loan Documents and the distribution by

Borrower, its members or Guarantor of insurance, condemnation proceeds or other sums in violation of any provision of any of the Loan Documents;

        (ii)     any physical waste by Borrower with respect to the Property;

        (iii)    the failure of Borrower to deposit (or cause to be deposited) any and all required sums into the appropriate account pursuant to the Loan Documents;

        (iv)    fraud, material misrepresentation or willful misconduct committed by Borrower or Guarantor (or any such party's respective agents or employees) in connection with the Loan or any Loan Document;

        (v)     any obligations and liabilities of Borrower or Guarantor arising under the terms and provisions of the Environmental Agreement;

        (vi)    the failure to pay charges for labor or materials that create liens on the Property to the extent such liens are not bonded over or released in accordance with the terms of the Loan Documents and to the extent of available funds to pay any such charges;

        (vii)   any Litigation;

        (viii)  any claim or lawsuit brought by Borrower, Guarantor, or any Person claiming by or through them in violation of Section 34 of the Instrument; and

        (ix)    any claim by Borrower, Guarantor, or any Person claiming by or through them that the Loan exceeds the maximum rate of interest permitted by law.

        (b)     the outstanding principal amount of the Loan, and all other amounts due and owing under the Loan Documents, together with reasonable attorneys' fees, court costs and costs of appeal, incurred or to be incurred by Lender resulting from or in connection with: (i) any breach of transfer restrictions, single purpose covenants and financing restrictions as set forth in Sections 5(d), 5(ll) and 5(dd) of the Instrument, or (ii) in the event (a) Borrower or Guarantor files a voluntary petition under the United States Bankruptcy Code or any other federal or state bankruptcy or insolvency law, or (b) any Affiliate files, or joins in the filing of, an involuntary petition against Borrower or Guarantor under the Bankruptcy Code or any other federal or state bankruptcy or insolvency law, or (c) Borrower or Guarantor files an answer consenting to or acquiescing in any involuntary petition filed against it or against Borrower or Guarantor, by any other Person (excluding Lender or its affiliates) under the Bankruptcy Code or any other federal or state bankruptcy or insolvency law, or (d) any Affiliate consents to or acquiesces in or joins in an application for the appointment of a custodian, receiver, trustee or examiner for Borrower or Guarantor or any portion of the Collateral (other than in any such application made by Lender or its affiliates), or (e) Borrower makes an assignment for the benefit of Lender or its affiliates, or admits, in writing, its insolvency or inability to pay its debts as they become due, or (f) Guarantor or Borrower or any Affiliate, in connection with any enforcement action or exercise or assertion of any right or remedy by or on behalf of Lender under or in connection with this

Guaranty, the Note, or any other Loan Document, seeks a defense, judicial intervention or injunctive or other equitable relief of any kind or asserts in a pleading filed in connection with a judicial proceeding any defense against Lender or any right in connection with any security for the Loan which the court in any such action or proceeding, determines that Guarantor's or Borrower's defense or such request for judicial intervention or injunctive or other equitable relief is (i) unwarranted or without merit and (ii) was not brought in good faith.

2.     Continuing Guaranty.  This is an irrevocable, absolute, continuing guaranty of payment and performance.  This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to the Guaranteed Obligations arising or created after any attempted revocation by Guarantor.  It is the intent of Guarantor that the obligations and liabilities of Guarantor hereunder are absolute and unconditional under any and all circumstances and that until the Guaranteed Obligations are fully, finally and indefeasibly satisfied, such obligations and liabilities shall not be discharged or released in whole or in part, by any act or occurrence which might, but for the provisions of this Guaranty, be deemed a legal or equitable discharge or release of Guarantor. Each and every default in payment of any amounts due or performance of any obligation required under this Guaranty shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises, or, in the discretion of Lender, may be brought as a consolidated suit or suits.

3.     Waivers.

(a)     Guarantor hereby assents to all terms and agreements heretofore or hereafter made by Borrower with Lender, and, except as such waiver may be expressly prohibited by law, waives notice of:

(i)     Any loans or advances made by Lender to Borrower under the Loan Documents;

(ii)     The present existence or future incurring of any of the indebtedness pursuant to the Note or any future modifications thereof or any terms or amounts thereof or any Guaranteed Obligations or any terms or amounts thereof;

(iii)     The obtaining or release of any guaranty or surety agreement (in addition to this Guaranty), pledge, assignment, or other security for any of the indebtedness evidenced by the Note, or any Guaranteed Obligations; and

(iv)     Notice of protest, default, notice of intent to accelerate and notice of acceleration in relation to any instrument relating to the indebtedness evidenced by the Note or any Guaranteed Obligations.

(b)     Guarantor hereby waives any rights and defenses which such Guarantor might have as a result of any representation, warranty or statement made by Lender or its agents to such Guarantor in order to induce Guarantor to execute this Guaranty and further waives any

-3-

other circumstance that might otherwise constitute a legal or equitable discharge or defense of the Guarantor.

(c)    Upon a default by Borrower, Lender in its sole discretion, without prior notice to or consent of Guarantor, may elect to: (i) foreclose either judicially or nonjudicially against any Collateral it may hold as security for the Loan, (ii) accept a transfer of any such security in lieu of foreclosure, (iii) compromise or adjust the Loan or any part of it or make any other accommodation with Borrower or Guarantor, or (iv) exercise any other remedy against Borrower or any security. No such action by Lender shall release or limit the liability of Guarantor, who shall remain liable under this Guaranty after the action, even if the effect of the action is to deprive Guarantor of any subrogation rights, rights of indemnity, or other rights to collect reimbursement from Borrower or any sums paid to Lender, whether contractual or arising by operation of law or otherwise. Guarantor expressly agrees that under no circumstances shall it be deemed to have any right, title, interest or claim in or to any real or personal property to be held by Lender or any third party after any foreclosure or transfer in lieu of foreclosure of any security for the Loan.

(d)    Regardless of whether Guarantor may have made any payments to Lender, until the Loan is indefeasibly paid in full and except as set forth in Section 10 hereof, Guarantor hereby waives (i) all rights of subrogation, indemnification, contribution and any other rights to collect reimbursement from Borrower or any other party for any sums paid to Lender, whether contractual or arising by operation of law (including the United States Bankruptcy Code or any successor or similar statute) or otherwise, (ii) all rights to enforce any remedy that Lender may have against Borrower, and (iii) all rights to participate in any security now or later to be held by Lender for the Loan.

(e)    Guarantor further waives any defense to the recovery by Lender against Guarantor of any deficiency or otherwise to the enforcement of this Guaranty or any security for this Guaranty based upon Lender's election of any remedy against Guarantor or Borrower, including the defense to enforcement of this Guaranty by virtue of any "anti-deficiency" statutes and their application following a non-judicial foreclosure sale.

(f)    Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guarantied obligation may adversely affect Guarantor's right of subrogation and reimbursement against Borrower.

(g)    Guarantor waives any defenses Guarantor may have by reason of an election of remedies by Lender, including, but not limited to, to the extent applicable and permitted in paragraph 40.495(4) of the Nevada Revised Statutes ("NRS"), the benefits of the one-action rule under NRS Section 40.340.

4.    Events and Circumstances Not Reducing or Discharging Guarantor's Obligations. Guarantor hereby consents and agrees to each of the following, and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely.

affected by any of the following, and waives any rights and defenses (excluding the rights to notice, if any, as herein provided or as required by law) which Guarantor might have otherwise as a result of or in connection with any of the following:

(a)    any and all extensions, modifications, adjustments, indulgences, forbearances or compromises that might be granted or given by Lender to Borrower, including, without limitation, any and all amendments, modifications, supplements, extensions or restatements of any of the Loan Documents;

(b)    the insolvency, bankruptcy, rearrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower or any other party at any time liable for the payment of all or part of the indebtedness evidenced by the Note or any Guaranteed Obligations; or any dissolution, consolidation or merger of Borrower or Guarantor, or any sale, lease or transfer of any or all of the assets of Borrower or Guarantor, or any changes in the ownership, partners or members Borrower or Guarantor;

(c)    the invalidity, illegality or unenforceability of all or any part of the indebtedness evidenced by the Note or any Guaranteed Obligations, or any document or agreement executed in connection with the indebtedness evidenced by the Note or any Guaranteed Obligations, for any reason whatsoever, including, without limitation, the fact that the indebtedness evidenced by the Note, or any part thereof exceeds the amount permitted by law, the act of creating the indebtedness evidenced by the Note or any Guaranteed Obligations or any part thereof is *ultra vires*, the representatives executing the Note or the other Loan Documents or otherwise creating the indebtedness evidenced by the Note or any Guaranteed Obligations acted in excess of their authority, the indebtedness evidenced by the Note violates applicable usury laws, Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the indebtedness evidenced by the Note or any Guaranteed Obligations wholly or partially uncollectible from Borrower, the creation, performance or repayment of the indebtedness evidenced by the Note or any Guaranteed Obligations is illegal, uncollectible, legally impossible or unenforceable, or any of the other Loan Documents pertaining to the indebtedness evidenced by the Note or any Guaranteed Obligations are irregular or not genuine or authentic;

(d)    the taking or accepting of any other security, collateral or guaranty, or other assurance of the payment, for all or any of the indebtedness evidenced by the Note or any Guaranteed Obligations;

(e)    any release, surrender or exchange of any collateral, property or security, at any time existing in connection with, or assuring or securing payment of, all or any part of the indebtedness evidenced by the Note or the Guaranteed Obligations;

(f)    the failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of such collateral, property or security;

-5-

(g)    the fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the indebtedness evidenced by the Note or Guaranteed Obligations shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being recognized and agreed by Guarantor that Guarantor is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectibility or value of any of the collateral for the indebtedness evidenced by the Note or the Guaranteed Obligations;

(h)    any payment by Borrower to Lender is held to constitute a preference under the Bankruptcy Code, or for any reason Lender is required to refund such payment or pay such amounts to such Borrower, or any other Person; or

(i)    any other action taken or omitted to be taken with respect to the Loan Documents, the indebtedness evidenced by the Note or the Guaranteed Obligations, the security and collateral therefor, whether or not such action or omission prejudices Guarantor or increases the likelihood that Guarantor will be required to pay the Guaranteed Obligations.

It is the unambiguous and unequivocal intention of Guarantor that Guarantor shall be obligated to pay and perform the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action or omission whatsoever, whether contemplated or uncontemplated, and whether or not otherwise or particularly described herein, except for the full and final payment and satisfaction of all Guaranteed Obligations.

5.    Payment by Guarantor. If the Guaranteed Obligations, or any part thereof, are not punctually paid or performed, as the case may be, Guarantor shall, immediately on demand and without protest or notice of protest, pay the amount due thereon to Lender, at its address set forth above or as otherwise designated by Lender. Such demand(s) may be made at any time coincident with or after the time for payment or performance of all or part of the Guaranteed Obligations. Such demand shall be deemed made if given in accordance with Section 17 hereof. It shall not be necessary for Lender, in order to enforce such payment or performance by Guarantor, first to institute suit or exhaust its remedies against Borrower, or others liable to pay or perform such Guaranteed Obligations, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the indebtedness evidenced by the Note or Guaranteed Obligations. No set-off, counterclaim, reduction, or diminution of any obligations, or any defense of any kind or nature which Guarantor has or may hereafter have against Borrower or Lender shall be available hereunder to Guarantor.

6.    Indebtedness or Other Obligations of Guarantor. If Guarantor is or becomes liable for any indebtedness owed by Borrower to Lender by endorsement or otherwise than under this Guaranty, such liability shall not be in any manner impaired or affected by this Guaranty, and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor. The exercise by Lender of any right or remedy hereunder or under any other instrument or at law or in equity shall not preclude the concurrent or subsequent

exercise of any other instrument or remedy at law or in equity and shall not preclude the concurrent or subsequent exercise of any other right or remedy. Further, without in any way diminishing or limiting the generality of the foregoing, it is specifically understood and agreed that this Guaranty is given by Guarantor as an additional guaranty to any and all guarantees hereafter executed and delivered to Lender by Guarantor in favor of Lender relating to the indebtedness and obligations of Borrower to Lender, and nothing herein shall ever be deemed to replace or be in lieu of any other of such previous or subsequent guarantees.

7.    **Application of Payments**.  If, at any time, there is any indebtedness or obligations (or any portion thereof) of Borrower to Lender which is not guaranteed by Guarantor, Lender, without in any manner impairing its rights hereunder, may, at its option, apply all amounts realized by Lender from collateral or security held by Lender first to the payment of such unguaranteed indebtedness or obligations, with the remaining amounts, if any, to then be applied to the payment of the indebtedness or obligations guaranteed by Guarantor.

8.    **Suits, Releases of Settlements with Others**.  Guarantor agrees that Lender, in its sole discretion, may bring suit against any other guarantor without impairing the rights of Lender or its successors and assigns against Guarantor or any other guarantor of the Guaranteed Obligations; and Lender may settle or compromise with such other guarantor for such sum or sums as Lender may see fit and release such other guarantor from all further liability to Lender, all without impairing its rights against Guarantor.

9.    **Warranties and Representations**.  Guarantor warrants and represents, as follows:

    (a)    Guarantor has received, or will receive, direct or indirect benefit from the making of this Guaranty, the making of the Loan and the entering into and execution of the Loan Documents in connection therewith;

    (b)    Guarantor is familiar with, and has independently reviewed the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment and performance of the indebtedness evidenced by the Note and the Guaranteed Obligations, and Guarantor assumes full responsibility for keeping fully informed as to such matter in the future; however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty;

    (c)    All financial statements concerning Guarantor which have been or will hereafter be furnished by Guarantor or Borrower to Lender pursuant to the Loan Documents, have been or will be prepared in accordance with generally accepted accounting principles in the United States of America, consistently applied, as of the date in question (except as disclosed therein, to the extent Lender approves such disclosure) and, in all material respects, present fairly the financial condition of the Persons covered thereby as of the dates thereof and the results of their operations for the periods then ended;

    (d)    No ERISA Affiliate of Guarantor maintains or contributes to, or has any obligation under, any employee benefit plans.  Guarantor is not an "employee benefit plan"

-7-

(within the meaning of section 3(3) of ERISA) to which ERISA applies and Guarantor's assets do not constitute plan assets. No actions, suits or claims under any laws and regulations promulgated pursuant to ERISA are pending or, to Guarantor's knowledge, threatened against Guarantor. Guarantor has no knowledge of any material liability incurred by Guarantor which remains unsatisfied for any taxes or penalties with respect to any employee benefit plan or any Multiemployer Plan, or of any lien which has been imposed on Guarantor's assets pursuant to section 412 of the Code or sections 302 or 4068 of ERISA. The Loan, the execution, delivery and performance of the Loan Documents and the transactions contemplated by this Guaranty are not a non-exempt prohibited transaction under ERISA; and

(e)     As of the date hereof, and after giving effect to this Guaranty and the contingent obligations evidenced hereby, Guarantor is and expects to be solvent at all times, and has and expects to have assets at all times which, fairly valued, exceed his or its obligations, liabilities and debts, and has and expects to have property and assets at all times sufficient to satisfy and repay his or its obligations and liabilities.

10.     Subordination. If, for any reason Borrower is now or hereafter becomes indebted to Guarantor (such indebtedness and all interest thereon being referred to as the **"Affiliated Debt"**), such Affiliated Debt shall, at all times, be subordinate in all respects to the full payment and performance of the obligations evidenced by the Note, and Guarantor shall not be entitled to enforce or receive payment thereof until all of the obligations evidenced by the Note have been fully paid. Guarantor agrees that any liens, mortgages, deeds of trust, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Affiliated Debt shall be and remain subordinate and inferior to any liens, security interests, judgment liens, charge or other encumbrances upon Borrower's assets securing the payment of the obligations evidenced by the Note and Guaranteed Obligations, and without the prior written consent of Lender, Guarantor shall not exercise or enforce any creditor's rights of any nature against Borrower to collect the Affiliated Debt (other than demand payment thereof). In the event of the receivership, bankruptcy, reorganization, arrangement, debtor's relief or other insolvency proceedings involving Borrower as a debtor, Lender shall have the right and authority, either in its own name or as attorney-in-fact for Guarantor, to file such proof of debt claim, petition or other documents and to take such other steps as are necessary to prove its rights hereunder.

11.     Waiver of Subrogation. Notwithstanding any other provision of this Guaranty to the contrary, until the Loan is indefeasibly paid in full, Guarantor hereby waives any claim or other rights which Guarantor may now have or hereafter acquire against Borrower or any other guarantor of all or any of the obligations that arise from the existence or performance of Guarantor's obligations under this Guaranty (all such claims and rights are referred to as **"Guarantor's Conditional Rights"**), including, without limitation, any right of subrogation, reimbursement, exoneration, contribution or indemnification, any right to participate in any claim or remedy of Lender against Borrower or any security or collateral which Lender now has or hereafter acquires, whether or not such claim, remedy or right arises in equity or under contract, statute (including the Bankruptcy Code or any successor or similar statute) or common

-8-

law, by any payment made hereunder or otherwise, including without limitation, the right to take or receive from Borrower, directly or indirectly, in cash or other property or by setoff or in any other manner, payment or security on account of such claim or other rights. If, notwithstanding the foregoing provisions, any amount shall be paid to Guarantor on account of Guarantor's Conditional Rights and either (i) such amount is paid to Guarantor at any time when the Guaranteed Obligation shall not have been paid or performed in full, or (ii) regardless of when such amount is paid to Guarantor, any payment made by Borrower to Lender is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid by Lender or paid over to a trustee, receiver or any other entity, whether under any bankruptcy act or otherwise (such payment, a "**Preferential Payment**"), then such amount paid to Guarantor shall be held in trust for the benefit of Lender and shall forthwith be paid to Lender to be credited and applied upon the Guaranteed Obligations, whether matured or unmatured, in such order as Lender, in its sole and absolute discretion, shall determine. The foregoing waivers shall be effective until the Guaranteed Obligations have been paid and performed in full.

12. Impairment of Subrogation Rights; Waivers of Rights Under the Anti-Deficiency Rules.

(a) Guarantor agrees that upon an Event of Default under the Loan Documents, Lender may elect to foreclose either nonjudicially or judicially against any real or personal property security (including, without limitation, the Collateral) it holds for the obligations evidenced by the Note or any Guaranteed Obligations, or any part thereof, or accept an assignment of any such security in lieu of foreclosure, or compromise or adjust any part of such obligations, or make any other accommodation with Borrower or Guarantor, or exercise any other remedy against Borrower or any collateral or security. No such action by Lender will release or limit the liability of Guarantor to Lender, who shall remain liable under this Guaranty after the action, even if the effect of that action is to deprive Guarantor of the right to collect reimbursement from Borrower or any other person or any sums paid to Lender or Guarantor's rights of subrogation, contribution, or indemnity against Borrower or any other person. Without limiting the foregoing, it is understood and agreed that on any foreclosure or assignment in lieu of foreclosure of any collateral or security held by Lender, such security will no longer exist and that any right that Guarantor might otherwise have, on full payment of the Guaranteed Obligations by Guarantor to Lender, to participate in any such security or to be subrogated to any rights of Lender with respect to any such security will be nonexistent; nor shall Guarantor be deemed to have any right, title, interest or claim under any circumstances in or to any real or personal property held by Lender or any third part following any foreclosure or assignment in lieu of foreclosure of any such security.

(b) Without limiting the foregoing, Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement.

(c)     Guarantor intentionally, freely, irrevocably and unconditionally waives and relinquishes all rights which may be available to it under any provision of applicable law to limit the amount of any deficiency judgment or other judgment which may be obtained against Guarantor under this Guaranty to not more than the amount by which the unpaid Guaranteed Obligations plus all other indebtedness due from Borrower under the Loan Documents exceeds the fair market value or fair value of any real or personal property securing said obligations and any other indebtedness due from Borrower under the Loan Documents, including, without limitation, all rights to an appraisement of, judicial or other hearing on, or other determination of the value of said property. Guarantor acknowledges and agrees that, as a result of the foregoing waiver, Lender may be entitled to recover from Guarantor an amount which, when combined with the value of any real or personal property foreclosed upon by Lender (or the proceeds of the sale of which have been received by Lender) and any sums collected by Lender from Borrower or other Persons, might exceed the amount of the Guaranteed Obligations plus all other indebtedness due from Borrower under the Loan Documents.

(d)     Guarantor understands and agrees that Lender may have the ability to pursue Guarantor for a judgment on the Guaranteed Obligations without having first foreclosed on the Collateral which is security for such Guaranteed Obligations, that Lender may have the ability to sue Guarantor for a deficiency judgment on the Guaranteed Obligations after a non-judicial foreclosure sale or, regardless of any election of remedies by Lender, if the Guaranteed Obligations or any of the other indebtedness of Borrower to Lender under the Loan Documents is considered to have been provided by a vendor to a buyer and to evidence part of the purchase price for the Collateral, and that Lender may be able to recover from Borrower an amount which, when combined with the fair market value of the property acquired by Lender in a foreclosure sale or the proceeds of the foreclosure sale received by Lender, might exceed the amount of the Guaranteed Obligations due and owing by Guarantor and the amounts payable under the Loan Documents.

(e)     Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies by Lender, such as a nonjudicial foreclosure with respect to security for the guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal.

Notwithstanding the foregoing or any provisions of Section 3(c) hereof, nothing contained in this Guaranty shall in any way be deemed to imply that any other state's law other than the law of the State of New York shall govern this Guaranty or any of the Loan Documents in any respect, except as expressly set forth therein, including with respect to the exercise of Lender's remedies under the Loan Documents.

Notwithstanding any other provision herein to the contrary, upon the indefeasible payment in full of the Note, Guarantor shall have all rights of subrogation available at law or in equity.

-5-

13.    Benefit.  This Guaranty is for the benefit of Lender, its successors and assigns, and in the event of an assignment by Lender, its successors and assigns, of the obligations evidenced by the Note, or any part thereof, the rights and benefits hereunder, to the extent applicable to the obligations so assigned, may be transferred with such obligations.

14.    No Release if Preference, Refund, Etc.  In the event any payment by Borrower to Lender is determined to be a preferential payment under any applicable bankruptcy or insolvency laws, or if for any reason Lender is required to refund part or all of any payment or pay the amount thereof to any other party, such repayment by Lender to Borrower shall not constitute a release of Guarantor from any liability hereunder, and Guarantor agrees to pay such amount to Lender upon demand to the extent such amount constitutes a Guaranteed Obligation.

15.    Right of Set-Off.  In addition to any other rights now or hereafter granted under applicable law and not by way of limitation of any such rights, upon Guarantor's failure to pay the Guaranteed Obligations, after demand by Lender, Lender is hereby authorized at any time and from time to time, without notice to Guarantor or to any other person, to set off and to appropriate and to apply any and all deposits (general or special) and any other indebtedness at any time held or owing by Lender to or for the credit or the account of Guarantor against or on account of the obligations evidenced by the Note.

16.    GOVERNING LAW.  PURSUANT TO SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK, GUARANTOR AGREES THAT THIS GUARANTY AND ALL RIGHTS, OBLIGATIONS AND LIABILITIES HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

17.    Notices.  Unless otherwise specifically provided herein, any notice or other communication required or permitted to be given shall be in writing addressed to the respective party as set forth in the Instrument and may be personally served, telecopied (with request for confirmation) or sent by overnight courier service, or United States registered mail return receipt requested, postage prepaid.  Any notice given shall be deemed effective upon delivery or on refusal or failure of delivery during normal business hours.  Notices shall be addressed to the parties at the following addresses as the party addressed shall have previously designated by written notice to the serving party, in accordance with this Section 17:

Guarantor:        SCC Acquisitions, Inc.
                  Moss Avenue
                  Irvine, California 92614
                  Telephone: (949) 777-4000
                  Facsimile: (949) 777-4052

With a copy to:      ..., Cook ... ...el LLP
                   ... Dove St..et
                   ...port Be..., California 92660
                   ..tention: David Lurker, Esq.
                   Tele:hone: (949) 435-0225
                   Facsimile: (949) 435-0226

Lender:              ..B. Zwi.. ...ecial Opportunities Fund, L.P.
                   .5 Fifth ...e, 18th Floor
                   ..  York, ...w York 10151
                   ..ttion: S..nne Kelley
                   ...hone: .16) 720-9148
                   ...imile: .16) 344-9885

With a copy to:      Ka..en Muchin Rosenman LLP
                   525 West Monroe
                   Chicago, Illinois 60661
                   ..tention: ...rew D. Small
                   ...phone: ...) 902-5489
                   ...imile ...) 577-8662

18.    Consent of Jurisdic... Service of Process.  IN ACCORDANCE WITH SECTION 5-1402 OF THE GENE... OBLI.ATIONS LAW OF THE STATE OF NEW YORK, GUARANTOR HEREBY CO...ENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED W...IN THE COUNTY OF NEW YORK, STATE OF NEW YORK AND IRREVOCABLY AGRE... THAT, SUBJECT TO LENDER'S ELECTION, ALL ACTIONS OR PROCEEDIN.. A... ...T OUT OF OR RELATING TO THIS GUARANTY OR THE OTHER L... DO...NTS SHALL BE LITIGATED IN SUCH COURTS.  GUARANTOR ACCE... FOR IT... F AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY A... UNCONDITIONALLY, THE NONEXCLUSIVE JURISDICTION OF THE AFOR...ID CO.RTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS, AN. ...REVOCABLY AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THERE.. ...N C.N.ECTION WITH THIS GUARANTY, THE NOTE, SUCH OTHER LOAN DOC...E.TS OR SUCH OBLIGATION.  GUARANTOR ACKNOWLEDGES AND AGRE..  ...HAT ...RVICE OF PROCESS IN ANY SUCH ACTION, SUIT OR PROCEEDIN. .VILL ... DEEMED EFFECTIVE.  SERVICE OF PROCESS ON GUARANTOR IF P...ONA.L.. ...RVED OR SERVED IN ACCORDANCE WITH SECTION 17 ABOVE OR A. ...UCH O..ER ADDRESS AS SUCH GUARANTOR MAY HAVE FURNISHED AS TO .... ...LP TO ...E SERVING PARTY BY LIKE NOTICE, OR TO THE LAST KNOWN A.DRESS O. SUCH GUARANTOR PROVIDED THEREUNDER.

19.    WAIVER OF JURY TRI...  GUARANTOR AND LENDER HEREBY WAIVE THEIR RESPECTIVE RIGHTS T... .URY ...IAL OF ANY CLAIM OR CAUSE OF

ACTION BASED UPON OR ARIS          UT OF      IS GUARANTY, ANY OF THE LOAN DOCUMENTS, OR ANY DEALIN       BETWE    N THEM RELATING TO THE SUBJECT MATTER OF THIS TRANSACT. N AND     THE RELATIONSHIP THAT IS BEING ESTABLISHED. GUARANTOR AN  LENDE   ALSO WAIVE ANY BOND OR SURETY OR SECURITY UPON SUCH BO      WHIC  MIGHT, BUT FOR THIS WAIVER, BE REQUIRED OF GUARANTOR OR LEND  R.   THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING O  ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND TH   RELA   TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING WI    OUT LIM    ATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY C   ME,      ALL OTHER COMMON LAW AND STATUTORY CLAIMS. GUARA    A    LENDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL   UC  NT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH   S AL    Y RELIED ON THE WAIVER IN ENTERING INTO THIS GUARANT   ND T   AT EACH WILL CONTINUE TO RELY ON THE WAIVER IN THEIR RELATED    TUR    DEALINGS. GUARANTOR AND LENDER FURTHER WARRANT AND REPRES  NT T   T EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AN    HAT   H KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGH     LLO  NG CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS I    CA     MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR     TE    ND THE WAIVER SHALL APPLY TO ANY     SUBSEQUENT     AME   E S.  RENEWALS,     SUPPLEMENTS     OR MODIFICATIONS TO THIS GUA   NT    F LOAN DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREE  NTS     ATING TO THE LOAN. IN THE EVENT OF LITIGATIO , THIS GUARANTY   AY    F  ED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

20.   Expenses. Guarantor          ft          d punctually pay all costs and expenses, including, without limitation, reason         y   es, court costs and costs of appeal, which Lender may incur in enforcing and c         he         nteed Obligations.

21.   Joint and Several Liab             t that this Guaranty is executed by more than one party    Guarantor, the lia          s     rties is joint and several.  In addition, Guarantors' obligations hereunder are    nt a      w l with any other person now or hereafter obligated under the Loan Documen     A s       action or actions may be brought and prosecuted against any one or more of Guaran     whether or not action is brought against any other person whether or not any other      n is jo    h such action or actions.

*[Remainder*          *ally Left Blank;*
                    *llows]*

-17-

IN WITNESS WHEREOF, the undersigned has executed this Guaranty as of the day and year first above written.

**G**

S... ...Q... ...IONS, INC., a California corporation

By: _____

Na... _____

Tit... _____